# 10-0206-CV

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

*DUSHAN KOSOVICH*
Plaintiff-Appellant,

v.

*METRO HOMES, LLC; DEAN S. GEIBEL; PAUL E. FRIED; DONALD J. TRUMP; THE TRUMP ORGANIZATION, INC.; UBS FINANCIAL SERVICES, INC.; KENNETH KAVANAGH; METRO HARBORSPIRE, LLC; METRO HARBORSPIRE, GM LLC; VECTOR URBAN RENEWAL ASSOCIATES, GM. LLC,*
Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of New York (New York City)

**BRIEF FOR DEFENDANTS-APPELLEES
METRO HOMES, LLC; DEAN S. GEIBEL; PAUL E. FRIED; METRO HARBORSPIRE, LLC; METRO HARBORSPIRE, GM LLC.; VECTOR URBAN RENEWAL ASSOCIATES, GM LLC; DONALD J. TRUMP; and THE TRUMP ORGANIZATION, INC.**

Of Counsel:
Leo V. Leyva
Kevin R.J. Schroth

On the Brief
Kevin R.J. Schroth
Nicole A. Gerritsen

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
A Professional Corporation
900 Third Avenue
New York, New York 10022
(212) 752-8000; (646) 521-2027 Facsimile
Attorneys for Appellees Metro Homes, LLC; Dean S. Geibel; Paul E. Fried; Metro Harborspire, LLC; Metro Harborspire GM, LLC and Vector Urban Renewal Associates GM, LLC

Of Counsel:
Mayra V. Tarantino

On the Brief
Mayra V. Tarantino

LITE DEPALMA GREENBERG, LLC
Two Gateway Center, 12th Floor
Newark, NJ 07102
(973) 623-3000; (973) 623-0858 Facsimile
Attorneys for Appellees Donald J. Trump and The Trump Organization, Inc.

## CORPORATE DISCLOSURE STATEMENT

Metro Homes, LLC ("Metro Homes") is a limited liability company organized under New Jersey Law. No parent corporation or publicly-held corporation owns 10% or more of Metro Homes.

Metro Harborspire, LLC is a limited liability company organized under New Jersey Law. No parent corporation or publicly-held corporation owns 10% or more of Metro Harborspire, LLC.

Metro Harborspire GM, LLC is a limited liability company organized under New Jersey Law. No parent corporation or publicly-held corporation owns 10% or more of Metro Harborspire GM, LLC.

Vector Urban Renewal Associates, GM LLC is a limited liability company organized under New Jersey Law. No parent corporation or publicly-held corporation owns 10% or more of Vector Urban Renewal Associates, GM LLC.

The Trump Organization, Inc. is a corporation organized under New York Law. No parent corporation or publicly-held corporation owns 10% or more of the Trump Organization, Inc.

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... ii

STATEMENT OF THE CASE .......... 1

STATEMENT OF FACTS .......... 2

STANDARD OF REVIEW .......... 17

SUMMARY OF ARGUMENT .......... 17

ARGUMENT .......... 19

I. THE TRIAL COURT PROPERLY DISMISSED PLAINTIFF'S COMPLAINT BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. .......... 19

II. PLAINTIFF'S COMPLAINT FALLS FAR SHORT OF STATING A CLAIM FOR BREACH OF SECURITIES LAW. .......... 22

A. Count One Fails To Meet The Heightened Pleading Requirement Of 15 U.S.C. § 78u-4(b). .......... 22

1. Plaintiff Failed To Allege Any Misstatements Or Omissions By Defendants. .......... 23

2. The Trial Court Properly Held That Plaintiff Failed To Allege Justifiable Reliance Because His Conduct Was Unreasonable As A Matter of Law. .......... 26

3. Plaintiff Failed To Allege Scienter With Sufficient Particularity .......... 28

4. The Trial Court Recognized That Plaintiff Failed To Allege That Defendants' Alleged Misrepresentations Caused Plaintiff's Losses .......... 29

5. Count One Fails To Demonstrate A Breach Of Securities Laws. .......... 30

III. THE TRIAL COURT FOUND THAT PLAINTIFF'S STATE LAW CLAIMS ARE ALSO FATALLY DEFICIENT. ......................32

A. The Trial Court Properly Dismissed Plaintiff's Fraud Claim For The Same Deficiencies That Undermined His Securities Fraud Claim. ............................................................32

1. Plaintiff Fails To Plead The Elements Of Fraud. ...........33

2. Plaintiff Fails To Plead His Fraud Claim With Specificity. ..........................................................................34

IV. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT. ..........................................................................35

1. Plaintiff's Breach Of Contract Claim Is Based Upon The Same Basic Allegations And Seeks The Same Relief As His Fraud Claim. ..................................36

2. Plaintiff Fails To Allege The Elements Of A Breach Of Contract. .........................................................37

V. PLAINTIFF FAILS TO STATE A CLAIM FOR "MONIES LOANED" OR "MONIES HAD AND RECEIVED AND UNJUST ENRICHMENT." ................................................................39

CONCLUSION ..................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amron v. Morgan Stanley Investment Advisors, Inc.*, 464 F.3d 338 (2d Cir. 2006) ....17

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (May 18, 2009).... *passim*

*Auerbach v. Klein*, 859 N.Y.S.2d, 2008 WL 680730 (N.Y. Sup. Ct. Feb. 15, 2008) ....36

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ....20, 21

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996) ....37

*In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp.2d 549 (S.D.N.Y. 2004)..32, 35

*Caniglia v. Chicago Tribune – New York News Syndicate, Inc.*, 612 N.Y.S.2d 146 (1st Dept. 1994) ....36

*Cohen v. Koenig*, 25 F.3d 1168 (2d Cir. 1994)....32

*Coyle v. Englander's*, 199 N.J. Super. 212 (App. Div. 1985) ....36

*DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242 (2d Cir. 1987)....33

*Fezzani v. Bear, Stearns & Co.*, 592 F. Supp.2d 410 (S.D.N.Y. 2008) ....32

*In re First Cent. Fin. Corp.*, 377 F.3d 209 (2d Cir. 2004)....39

*Gidatex S.r.L. v. Campaniello Imports, Ltd.*, 49 F. Supp. 2d 298 (S.D.N.Y. 1999) ....39

*Gordon v. DeLaurentiis Corp.*, 529 N.Y.S.2d 777, 141 A.D.2d 435 (1988) ....39

*Granite Partners, L.P. v. Bear Stearns & Co.*, 17 F.Supp.2d 275 (S.D.N.Y. 1998) ....40

*Grow Co., Inc. v. Chokshi*, 2006 WL 3783519 (N.J. App. Div. Dec. 22, 2006) ....36

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 767 F. Supp. 1269 (S.D.N.Y. 1991) .......... 40

*Heller v. Goldin Restructuring Fund, L.P.*, 590 F.Supp.2d 603 (S.D.N.Y. 2008) .......... 3

*Khrakovskiy v. Denise*, 2009 WL 3380326 (D.N.J. Oct. 19, 2009) .......... 38, 39

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005) .......... 29

*Marino v. Vunk*, 835 N.Y.S.2d 47, 39 A.D.3d 339 (1st Dep't 2007) .......... 38

*Mason v. American Tobacco Co.*, 346 F.3d 36 (2d Cir. 2003), *cert. denied*, 541 U.S. 1057 (2004) .......... 20, 23

*May Dep't Stores Co. v. Int'l Leasing Corp.*, 1 F.3d 138 (2d Cir. 1993) .......... 32

*In re Omnicom Group, Inc. Sec. Litig.*, 2005 WL 735937 (S.D.N.Y. Mar. 28, 2005) .......... 33, 35

*Rombach v. Chang*, 255 F.3d 164 (2d Cir. 2004) .......... 33

*S.S. Silberblatt, Inc. v. E. Harlem Pilot Block Bldg. 1 Housing Dev. Fund Co.*, 608 F.2d 28 (2d Cir. 1979) .......... 27

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) .......... 20, 21

*Spain v. Deutsche Bank*, 08 Civ. 10809 (LBS), 2009 WL 3073349 (S.D.N.Y. Sept. 18 2009) .......... 26

*Sultan v. Read*, 2005 WL 486732 (S.D.N.Y. Mar. 1, 2005) .......... 37

*Telllabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .......... 28

*USA Certified Merchs. LLC v. Koebel*, 262 F.Supp.2d 319 (S.D.N.Y.) .......... 33

**STATUTES**

15 U.S.C. § 77a, *et seq.* .......... 30

15 U.S.C. § 78u-4(b) .......... 22, 23

15 U.S.C. § 78u-4(b)(2) .......... 28

Securities Act of 1933 .......... 11, 30

**RULES**

Fed. R. Civ. P. 8 ........................................................................... 19, 20, 22

Fed. R. Civ. P. 9 ........................................................................... 33, 34, 35

Rule 10b-5 ........................................................................................... 32

Fed. R. Civ. P. 12(b)(6) .................................................................. 17, 19, 20, 22

**REGULATIONS**

17 C.F.R. § 230-501(a)(5) .................................................................... 31

17 C.F.R. § 230.506 .............................................................................. 30, 31

Rule 501(a) of Regulation D ................................................................... 10

## STATEMENT OF THE CASE

In a sharply worded decision, Judge Rakoff properly dismissed Plaintiff Dr. Dushan Kosovich's Complaint with prejudice. This is a classic case of buyer's remorse, or more aptly, investor's remorse. Dr. Kosovich invested $1,000,855.67 in Metro Harborspire, LLC, a real estate condominium project, to finance and build two residential towers of 55 and 50 floors in Jersey City, New Jersey ("Harborspire" or the "Project"). Plaintiff made his investment in late 2005, during a real estate boom. After the real estate and financial markets collapsed, Plaintiff commenced this lawsuit in a desperate attempt to recover his investment.

The trial court rejected each of Plaintiff's claims because they lack factual support and are simply implausible. Plaintiff executed a series of contracts when he made his decision to invest and, in so doing, acknowledged myriad explicit warnings related to the inherent risk in investing in the Project. The trial court concluded that Plaintiff's allegations were unreasonable as a matter of law because his allegations are contradicted by the documents he executed. Moreover, his claims are logically inconsistent and contradictory. On one hand, Dr. Kosovich claims he relied upon misstatements and omissions in the contracts. On the other hand, he claims he never saw the contracts when he invested in 2005, and therefore was unaware of the prominent warnings and descriptions of his investment.

Plaintiff cannot have it both ways. The trial court also found that Plaintiff failed to plead each additional element of securities fraud and common law fraud.

The trial court also dismissed Plaintiff's breach of contract claim, which failed to identify a contract or the terms that were breached. Plaintiff's breach of contract claim is also based upon the same allegations as his fraud claims. Finally, the trial court dismissed Plaintiff's claims seeking equitable relief because the claims arise from the contracts governing Plaintiff's investment in the Project.

Therefore, the trial court appropriately dismissed Plaintiff's Complaint, with prejudice, as to each of the Defendants. Dismissal of the Complaint with prejudice was appropriate because Plaintiff failed to state a cause of action against Defendants, and permitting discovery, as Plaintiff now requests, would allow Plaintiff to go on a "fishing expedition" to find a cause of action where none exists.

## STATEMENT OF FACTS[1]

In 2005, Dean Geibel, a real estate developer and principal of Metro Homes, created Metro Harborspire, LLC ("Harborspire") as part of a plan to finance and build two towers of 55 and 50 floors, with more than 800 residential units in Jersey

[1] The facts here are based on the Appendices filed by Plaintiff and Defendants. References to Plaintiff's Appendices are designated as SPA# and A# (with the relevant page number taking the place of the "#" symbol). References to Defendants' Appendix are designated as SA#.

City, New Jersey (the "Project"). ( SA20-21.)[2] On August 1, 2005, two confidential private placement memoranda were prepared as part of an offering of securities to raise capital to finance the Project. (SA12 and SA62.) The "Class A Memorandum" and "Class B Memorandum" (together, the "Memoranda") were prepared for Class A and Class B investors. The Memoranda reflected that an investment in Harborspire, like any investment, could yield profits or result in losses.

**Dr. Kosovich's Investments In Harborspire**

In late 2005, Dr. Kosovich invested a total of $1,000,855.67 in Harborspire through two checks. (A42 at ¶¶ 16-17.) The first check, dated November 9, 2005, was payable to Harborspire in the amount of $900,855.67. (SA344.) On or about December 21, 2005, Dr. Kosovich forwarded a second check to Harborspire in the amount of $100,000.00. (SA344.) At around the same time, Dr. Kosovich executed several contracts (described below) governing the terms of his investment, including representations and warranties in which he recognized his awareness of various risks related to the investment. By executing those

[2] Defendants attached as exhibits to the Geibel Certification in support of their motion to dismiss controlling contractual documents that are integral to or explicitly referenced in the Complaint. *See Heller v. Goldin Restructuring Fund, L.P.*, 590 F.Supp.2d 603, 607 n4 (S.D.N.Y. 2008) ("When a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotations omitted).

documents and by advancing funds to Harborspire, Dr. Kosovich became a Class A and a Class B member of Harborspire.

Dr. Kosovich, a self-described “busy doctor,” admits that he does “not have the time to investigate [his] investments the way that he should.” (A249-A250 at ¶ 6.) Dr. Kosovich candidly states that he has “little or no knowledge of financial matters.” (A249 at ¶ 4.) Nevertheless, Dr. Kosovich invested in Harborspire knowingly and intentionally. He explained that he was dissatisfied with his 401(k) retirement account, which was losing money. (A249 at ¶ 5.)

## The Complaint’s Allegations

Dr. Kosovich’s Complaint consists of a random collection of facts, which, as the trial court found, fail to assert a viable cause of action. Notably, Dr. Kosovich claimed, for the first time in his papers in opposition to Defendants’ motion to dismiss, that he did not receive a copy of the Memoranda before investing in Harborspire. (SPA10.) Dr. Kosovich admits, however, that he was furnished with a “Brochure” before he invested in the Project. (A233.) As the Complaint explains, the Brochure is a letter, dated August 15, 2005, outlining the offering to prospective investors. (A44 at ¶ 14.) The Complaint states that the Brochure accompanied a Memorandum, contradicting Dr. Kosovich’s assertion that he did not receive the Memoranda. (A50 at ¶ 45; A233, A239.) Additionally, the Brochure expressly references the Memoranda and Operating Agreement for the

Project and includes a number of charts and projections from the Offering Binder. (A55-A72.) The Brochure also references the Offering Binder, which, as explained below, included the Memoranda and other controlling documents. (A56.)

Count One of the Complaint alleges a breach of "Securities Law." (A44-A38 at ¶¶ 12-38.) Count One describes Dr. Kosovich as a doctor specializing in psychiatry who is "completely naïve and uninformed as to financial matters." (A46 at ¶ 21.) The Complaint alleges Dr. Kosovich mortgaged his apartment to obtain the funds to invest in Harborspire and concludes Dr. Kosovich was not a "qualified" investor. (A46 at ¶¶ 22, 24.) The Complaint further alleges that Dr. Kosovich did not qualify as a "sophisticated investor" under Regulation D; the "Private Placement" did not qualify as an exemption to the filing requirements of Regulation D "of the S.E.C.;" and the "Private Placement was an unregistered offering in violation of S.E.C.Rules [sic] and Regulations…." (A48 at ¶¶ 34-35.) Count One, however, fails to identify a statute that was breached. Likewise, it does not explain how these allegations support a cause of action.

Dr. Kosovich alleges that an unspecified "Private Placement Memorandum" contained material omissions and misstatements. (A47 at ¶ 32.) The Complaint is inconsistent in that, on one hand, it alleges the "Memorandum neglected and omitted to give any details of the Trump participation in the project and was

misleading to the investor." (A46 at ¶ 23.) However, in a subsequent paragraph, the Complaint states that the Memorandum explains Trump's participation in a footnote. (A47 at ¶ 33.) The Complaint further alleges that Defendants made "several partial interest payments" to Dr. Kosovich totaling more than $67,000, which was less that what had been promised to him. (A47 at ¶¶ 28-29.) Finally, Count One concludes that Dr. Kosovich suffered approximately $1.5 million in damages.

Count Two of the Complaint alleges breach of contract. The Complaint references a June 30, 2005, agreement between Dr. Kosovich and "Metro, by way of UBS Financial…whereby Kosovich agreed to advance … $1,000,868" to Metro Homes, Geibel, and Fried. (A48-A49 at ¶ 36.) Plaintiff did not attach the purported contract to the Complaint or otherwise identify its precise terms.

Count Three of the Complaint vaguely alleges misrepresentation and fraud against various defendants. (A49-A51 at ¶¶ 41-59.) Dr. Kosovich alleges that unspecified Defendants represented that he would be paid 15% interest annually on the monies that he advanced. (A49, A51 at ¶¶ 41, 57.) Those misrepresentations were allegedly calculated to induce Dr. Kosovich to invest in the Project. (A51 at ¶ 57.)

Further, Count Three alleges that "Trump and Trump Development[3] contracted with Metro to lend the Trump name and reputation to the development to be erected as Trump Plaza." (A50 at ¶47, footnote added.) Plaintiff also alleges that "Trump permitted the promiscuous and indiscriminate use of his name and reputation to create the impression by the general public that Trump was intimately connected and involved with the Project as a principal." (A50 at ¶ 48.) Dr. Kosovich was "greatly impressed by the presence of Trump in the Project and was influenced thereby to make his investment of one million dollars plus." (A50 at ¶ 49.) Paragraphs 47-49 of Count Three are the only paragraphs of the Complaint that contain specific allegations against Trump. Other than being named in the caption and listed as a party, there are no allegations against the Trump Organization.

The Complaint also alleges that "UBS and Kavanagh were aware of and participated in the misleading statements presented by Metro, Fried, and Geibel to Kosovich to influence the plain-to [sic] advance the monies to defendants." (A50 at ¶ 50.)

Count Four, "Monies Loaned," alleges that on June 30, 2005, Dr. Kosovich loaned to the Defendants "$1,000,800.. [sic] to be repaid in three years from the date of the advance made by plaintiff, together with interest, payable annually, at

[3] "Trump Development" is not a named defendant is this matter.

the rate of 15% per annum." (A51-A52 at ¶61.) The Complaint fails to reference any documents supporting this purported loan. Moreover, the Complaint fails to explain how the purported loan differs from Dr. Kosovich's investment in Harborspire, which is indisputably governed by contracts to which Dr. Kosovich expressly agreed.

Count Five alleges unjust enrichment in conclusory terms. This count alleges that unspecified "defendants" received $1,000,800 from Dr. Kosovich, and that he is due that amount plus 15% interest per annum. (A52 at ¶¶ 65-66.)

**The Offering Binder**

Prospective investors in the Project were presented with an "Offering Binder," portions of which were attached to Plaintiff's Complaint, consisting of the following documents:

| | |
|---|---|
| Tab 1: | Summary of Terms; |
| Tab 2: | Class A Private Placement Memorandum (the "Class A Memorandum"); |
| Tab 3: | Class B Private Placement Memorandum (the "Class B Memorandum"); |
| Tab 4: | Operating Agreement and Investment Documents; |
| Tab 5: | Supporting Schedules; |
| Tab 6: | Site and Floor Plans; |
| Tab 7: | Exhibits; |
| Tab 8: | Signature Pages. |

(The Offering Binder is part of the Supplemental Appendix at SA3-SA295.) Tab 8 of the Offering Binder, "Signature Pages," consisted of a selection of pages from the controlling agreements found in Tab 2 (Class A Private Placement

Memorandum), Tab 3 (Class B Private Placement Memorandum), and Tab 4 (Operating Agreement and Investment Documents).

On or about October 24, 2005, Dr. Kosovich executed the documents found in Tab 8 of the Offering Binder. Specifically, he executed: (a) two signature pages for the Operating Agreement, one for Class A membership in Harborspire and one for Class B membership (SA296); (b) a Subscription Agreement for Class A membership (the "Class A Subscription") (SA299); (c) a substantially identical Subscription Agreement for Class B membership (the "Class B Subscription"), which included an "'Accredited Investor Status" form and a Questionnaire to Prospective Offerees (SA314); and (d) a W-9 taxpayer identification form. (SA329.)

**The Subscription Agreements**

By executing the Class A Subscription and Class B Subscription, Dr. Kosovich agreed to the terms of the Class A Memorandum, the Class B Memorandum, and the Operating Agreement for Harborspire (together, these documents are referred to as the "Controlling Agreements"). He also expressly confirmed that those documents, along with the Offering Binder, were delivered to him. (SA299-SA328 at ¶ 1.)

**Dr. Kosovich's Representations And Warranties**

By executing the Class A Subscription and Class B Subscription, Dr. Kosovich expressly agreed to numerous representations and warranties. Initially, by executing the Controlling Agreements and questionnaire, Dr. Kosovich represented he was subscribing for "Interests in the Company" for his own "risk and beneficial interest." (SA301, SA316.) In the questionnaire, Dr. Kosovich further represented as follows:

- He previously bought securities that were exempt from federal and state registration (through private placement offerings);[4]
- On two or more occasions, he had invested in an issuer that was a limited liability company or a limited partnership;
- His approximate annual income from all sources was "$10M+";
- His approximate total assets were "$25M+";
- The source of his investment funds was savings; and
- The information in the questionnaire was "complete, true and correct…."

(SA305-SA306, SA320-SA321.)

Contrary to the allegations in the Complaint, in Part III of the Class A Subscription, Dr. Kosovich represented that he was an "Accredited Investor" as that term is defined in Rule 501(a) of Regulation D of the Securities Act of 1933 as

[4] This was the second time that Dr. Kosovich executed substantially identical documents and invested in a Metro Homes real estate project. In June of 2005, Dr. Kosovich invested $200,000 in a Metro Homes project in Asbury Park, New Jersey, which resulted in a similar lawsuit. (SA333-SA343.)

amended. (SA311.) He specifically represented that his "individual net worth or joint net worth with [his] spouse as of [October 24, 2005 was] in excess of $1,000,000," and as of October 24, 2005, his individual income was "in excess of $200,000 in each of the two most recent years or joint income with [his spouse was] in excess of $300,000 in each of those years" and that he reasonably expected to reach the same income level in 2005. (SA311.)

The Class A Subscription and Class B Subscription contain additional representations and warranties to which Dr. Kosovich agreed when he executed the Class A Subscription and Class B Subscription. (SA12-SA112.) Those detailed representations and warranties reflect the following:

- Plaintiff was furnished with the Memorandum and the Offering Binder;
- Plaintiff carefully read and understood these materials, appropriately evaluated the merits and risks of the investment, and had an opportunity to ask questions to (and get answers from) the General Manager;
- Plaintiff met the suitability standards required for this investment, as set forth in the Memorandum, and understood that the interests in Harborspire were not registered with the Securities Act of 1933, as amended (the "1933 Act") or the securities or similar laws of any state, and were offered in reliance on exemptions therefrom;
- Plaintiff recognized that the Project was a "speculative venture involving a high degree of financial risk" and that Plaintiff could bear the economic risk of losing his entire investment;

- Plaintiff had the requisite knowledge and experience in financial and business matters to be capable of evaluating the merits and risks of this investment;

- Plaintiff "received no representations, warranties or written communications with respect to the offering of Interests other than those contained in the Memorandum," and entered into the transaction "not relying upon any information other than that contained in the Offering Binder, the Memorandum, the Operating Agreement, and the results of the Investor's own independent investigation."

[SA113-SA211 at ¶¶ 2-4.]

The Subscription also contains an integration clause stating the following: "This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, may be amended only by a writing executed by all of the parties, and supersedes any prior agreement between the parties with respect to the subject matter hereof." (SA164 at ¶ 10.)

**The Memoranda Describe The Risks Of Investing In Harborspire**

The Memoranda are replete with conspicuous disclosures designed to inform investors and potential investors of the high degree of risk associated with investing in Harborspire. For example, the cover page of the Private Placement states in bold:

> **THESE SECURITIES INVOLVE A HIGH DEGREE OF RISK SEE "CERTAIN RISK FACTORS" ON PAGE 30 OF THIS MEMORANDUM**
>
> [SA12, SA63.]

On various other pages, clear and unambiguous warnings provide as follows:

> **INVESTMENT IN THE INTERESTS INVOLVES CERTAIN RISKS. THE INTERESTS ARE SPECULATIVE, INVOLVE SUBSTANTIAL RISKS…. INVESTORS COULD LOSE ALL OR SUBSTANTIALLY ALL OF THEIR INVESTMENT IN THE COMPANY.**
>
> * * *
>
> **AS WITH ANY SPECULATIVE REAL ESTATE INVESTMENT, THERE ARE SIGNIFICANT RISKS AND THERE CAN BE NO ASSURANCE OR GUARANTEE THAT THE COMPANY WILL MEET ITS BUSINESS OR INVESTMENT OBJECTIVES.**
>
> [SA16, SA67.]

As if that was not enough, each of the Memoranda contains a section titled **"CERTAIN RISK FACTORS"** that covers twelve pages describing risks associated with investments in Harborspire. (SA42-SA54, SA93-105.)

**<u>The General Manager's Discretion To Withhold Distributions</u>**

As the Memoranda reflect, Metro GM is the General Manager of Harborspire. (SA22-SA23, SA74, SA116.) As such, Metro GM "has complete responsibility and authority for all aspects of the Company's business and operations, and has full discretionary investment and management authority over the Company and its affairs." (SA23, SA74.) Metro GM's authority includes the "sole discretion" to determine "the timing and amount of all distributions" including whether Harborspire has sufficient cash flow to justify distributions to Class A and Class B investors. (SA123-SA128.)

Pursuant to the Class A Memorandum, unless otherwise determined by Metro GM, Class A investors were not entitled to receive any return on their capital contributions until the project was completed and all condominium units were sold and closed. (SA22.) Even then, Class A investors would only receive a return, if any, after deducting operating expenses, including Class B returns, and other specified costs and expenses identified in the Operating Agreement. (SA24, SA123-SA128.)

Similarly, payment of distributions to Class B investors was "restricted or limited by the availability of sufficient cash flow or income…as determined by [Metro GM] in its sole discretion." (SA75.) Pursuant to the Class B Memorandum, Class B members will be entitled to the "Class B Preferred Return from Capital Proceeds (…as defined in the Operating Agreement) … whenever funds are available and when and as declared by the General Manager in its sole and absolute discretion." (SA75.)

## The Trump License Agreements

On or about July 20, 2005, Trump entered into a License Agreement with Metro Homes, under which Trump agreed to grant a license to Metro Homes to use the "Trump" mark to identify the project's buildings in advertising, promotional, and publicity materials. (SA1 at ¶ 3). This was disclosed in a footnote in each Private Placement Memorandum. (SA28, SA79.) Pursuant to an Assignment and

Assumption of License Agreement dated as July 30, 2007, Trump assigned his right, title, and interest in the License Agreement to Trump Marks Jersey City LLC, which was acknowledged and agreed to by Metro Homes. (SA1 at ¶ 4.) Trump Organization was not a party to the License Agreement or the Assignment and Assumption Agreement. (SA2 at ¶ 6.) Trump Organization had no involvement in the Project whatsoever. (SA2 at ¶ 6.)

Before the trial court, Dr. Kosovich did not dispute that he executed: (a) signature pages for the Operating Agreement (one for Class A membership and another for Class B membership in Harborspire; (b) a Subscription Agreement for Class A membership (the "Class A Subscription"); (c) a substantially identical Subscription Agreement for Class B membership, which included an "Accredited Investor Status" form and a Questionnaire to Prospective Offerees; and (d) a W-9 taxpayer identification form. (A228-A252.)

**Judge Rakoff's Decision**

Judge Rakoff heard oral argument on Plaintiff's motion on November 30, 2009. On December 1, 2009, the trial court issued an Order dismissing Plaintiff's Complaint with prejudice. (A6.) On December 29, 2009, the trial court issued a Memorandum Order explaining its reasoning. (SPA1.)

The trial court dismissed Plaintiff's securities fraud claim, finding, initially, that Plaintiff failed to plead facts with the required level of specificity. (SPA6.)

The trial court reasoned that Plaintiff failed to identify who was responsible for making each alleged misrepresentation or omission, or to state the content of the alleged misrepresentations. Further, the trial court found that the Complaint "does not identify any statements made by Trump or Trump-related entities upon which plaintiff relied–beyond the mere fact that Trump licensed his name to the project." (SPA7.)

The trial court found that the securities fraud allegations are "so substantially flawed" that they could not be cured by granting leave to replead. (SPA7.) The trial court further explained that Plaintiff's alleged reliance on any misstatements was "unreasonable as a matter of law, given the innumerable disclaimers in the offering materials." (SPA8.) Addressing Dr. Kosovich's allegation that he did not receive the Memoranda before making his investment, the trial court found that:

> the representations in the Brochure alone, let alone those in the PPMs, are sufficient to render unreasonable as a matter of law any reliance by plaintiff on the alleged statements by his broker that his investment was in the nature of a three-year loan with annual interest payments of fifteen percent. This holds true even if the Court were to grant leave for plaintiff to amend his complaint….
>
> [SPA 12-13.]

The trial court also found that Plaintiff failed to allege fraudulent intent, or that the alleged fraud was the cause of the actual loss suffered. (SPA12-13.) Moreover, the trial court found that Plaintiff's securities claims are time-barred.

(SPA11.) Additionally, Plaintiff's common law fraud claims failed under the same rationale justifying dismissal of the federal securities claim of fraud. (SPA15.)

The trial court rejected Plaintiff's breach of contract claim because Plaintiff failed to identify the terms of the contract that were allegedly breached. Although Plaintiff did not allege a breach of the Controlling Documents, the trial court recognized that under the offering documents, distributions to investors are clearly contingent on sufficient cash flow and the discretion of the general manager.

The Court dismissed Plaintiff's claim of monies loaned because the investment was clearly not a loan. Finally, the trial court dismissed the Complaint's claims based on theories of quasi contract because the parties' dealings were governed by express contracts, and Plaintiff's losses were consistent with the express terms of his investment. (SPA16.)

## STANDARD OF REVIEW

The standard of review for a Rule 12(b)(6) order of dismissal is *de novo*. *Amron v. Morgan Stanley Investment Advisors, Inc.*, 464 F.3d 338, 343 (2d Cir. 2006).

## SUMMARY OF ARGUMENT

Plaintiff's Complaint was properly dismissed with prejudice by Judge Rakoff because Plaintiff failed to state a claim upon which relief can be granted, and there are no facts to support the claims proffered by Plaintiff. Plaintiff admits

as much in his brief submitted to this Court by requesting, as part of his relief, discovery prior to re-filing a Complaint. However, the fact remains that Plaintiff has failed to state any plausible claim against Defendants.

A victim of the struggling real estate market, Plaintiff's claim for breach of the securities laws fails to meet the pleading requirements of *Twombly* and *Iqbal* as well as the heightened pleading requirements of the Private Securities Litigation Reform Act. Plaintiff fails to even identify the alleged misstatements or omissions that support his claim. Moreover, the trial court correctly found that Plaintiff's conduct was unreasonable as a matter of law because he admittedly relied upon statements that were directly contradicted by the offering materials to which he agreed. Furthermore, Plaintiff has not alleged loss causation, which further supports the dismissal of his claim.

Plaintiff's state law claim for fraud fails for similar reasons. Simply put, Plaintiff has not alleged the elements of a cause of action for fraud. As with his fraud claim, Plaintiff's claim for breach of contract fails because he fails to set forth the elements of such a claim. Additionally, Plaintiff's breach of contract claim was properly dismissed because Plaintiff fails to distinguish this claim from his fraud claim.

Finally, Plaintiff's claims for "monies loaned" and "monies had and received and unjust enrichment" must fail as well. As an initial matter, Plaintiff *invested* in

Harborspire; he did not make a loan. The trial court correctly noted that it was unreasonable of Plaintiff to think otherwise based on the documents he executed prior to making the investment. Moreover, Plaintiff's claim for "monies had and received and unjust enrichment" fails because this theory is duplicative of the recovery he seeks under his breach of contract theory.

Plaintiff's Complaint fails to properly set forth the elements of any cause of action alleged therein against Defendants, and the theories advanced in Plaintiff's Complaint in support of his claims are unreasonable as a matter of law. As such, the trial court properly dismissed Plaintiff's Complaint with prejudice, and this Court should affirm the dismissal of the Complaint with prejudice.

## ARGUMENT

### I. THE TRIAL COURT PROPERLY DISMISSED PLAINTIFF'S COMPLAINT BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In a well-reasoned decision, Judge Rakoff dismissed the Complaint with prejudice because it fails to state a claim upon which relief can be granted.[5] A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Failing to satisfy Rule 8 is grounds for dismissal for failure to state a claim pursuant to Rule 12(b)(6).

[5] Defendants adopt and incorporate by reference the arguments set forth in the Memorandum of Law of Defendant/Appellee UBS Financial Services Inc.

The United States Supreme Court, in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (May 18, 2009), recently elaborated upon the pleading requirements of Rule 8(a)(2). In *Twombly*, the Court explained that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. As such, "to survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

In deciding a motion to dismiss, a court must generally accept as true all of the allegations contained in a complaint; however, a court is <u>not</u> required to accept as true legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . . ." *Iqbal*, 129 S.Ct. at 1949. It is well-settled law that the presumption of truthfulness does <u>not</u> apply to conclusory allegations or legal conclusions. *See Mason v. American Tobacco Co.*, 346 F.3d 36, 39 (2d Cir. 2003) ("[L]egal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness.") (internal quotation marks and citations omitted), *cert. denied*, 541 U.S. 1057 (2004); *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)

("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

After disregarding conclusory statements and legal conclusions, the Court considers whether the complaint states a "plausible" claim for relief. To be "plausible on its face," the court must be able to draw the reasonable inference, from the complaint, that the defendant is responsible for the alleged misconduct. *Id.* The Courts in *Twombly* and *Iqbal* highlight, however, that merely pleading facts that are consistent with a defendant's liability "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (*citing Twombly*, 550 U.S. at 555). To determine whether a complaint states a "plausible" claim for relief, the court must "draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. As the Court in *Iqbal* explained:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they *plausibly* give rise to an entitlement to relief.
>
> [*Iqbal*, 129 S.Ct. at 1950 (emphasis added).]

As explained below, the trial court properly held that Plaintiff failed to support his Complaint with sufficient factual matter, and that Plaintiff's allegations do not state a plausible claim for relief. Therefore, the trial court properly

dismissed Plaintiff's claims against Metro Homes, Geibel, Fried, Metro GM, Vector, Trump, and the Trump Organization[6] pursuant to Rule 12(b)(6).

## II. PLAINTIFF'S COMPLAINT FALLS FAR SHORT OF STATING A CLAIM FOR BREACH OF SECURITIES LAW.

### A. Count One Fails To Meet The Heightened Pleading Requirement Of 15 U.S.C. § 78u-4(b).

In a strongly worded decision, Judge Rakoff held that Plaintiff's securities claim falls far short of the required elements. To state a claim for relief for breach of securities laws, Plaintiff is required to satisfy not only the pleading requirements of Rule 8(a), but he must also meet the heightened pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA"). The relevant securities law provides:

> In any private action arising under this chapter in which the plaintiff alleges that the defendant—
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

[6] Other than being named in the caption and listed as a party, there are no allegations in the Complaint against Trump Organization. Plaintiff's failure to allege any facts against Trump Organization fails to satisfy the pleading requirement of Rule 8(a)(2). For this reason alone, the Complaint against Trump Organization was properly dismissed in its entirety for failure to state a claim upon which relief may be granted.

[15 U.S.C. § 78u-4(b).]

Based on the foregoing, Plaintiff is required to show that he is entitled to relief in accordance with the standard set forth in *Twombly* and *Iqbal*, and Plaintiff must also specify: (1) each statement alleged to have been misleading, (2) the reason why the statement is misleading, and (3) for those allegations made upon information and belief, Plaintiff must state with particularity all facts on which such belief is formed. *Id.* In considering the sufficiency of Plaintiff's allegations, the Court is not required to accept conclusory allegations as true. *See Iqbal*, 129 S.Ct. at 1949; *Mason v. American Tobacco Co.*, 346 F.3d at 39 ("[L]egal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness.").

### 1. Plaintiff Failed To Allege Any Misstatements Or Omissions By Defendants.

In finding that Plaintiff failed to meet each element of securities fraud and state law fraud, (SPA14-15), the trial court found that Plaintiff failed to identify "who was responsible for making each alleged misrepresentation or omission, far less … the precise content of the alleged misstatements…." (SPA7.)

Plaintiff did not allege any actionable statements or omissions by the Trump Defendants. (SPA7, SPA14.) As the trial court stated, "***Many of the allegations in the complaint are, indeed, utterly inscrutable***, particularly those relating to the

Trump Defendants." (SPA7) (emphasis added). Plaintiff's only allegation concerning Trump is that "the aura that surrounded Trump," along with the alleged invitation by Geibel, Fried, UBS, and Kavanagh to invest in the project in return for the promised interest, convinced him to invest in the Project. (A46.) Absent a representation of any kind by Trump, the court properly found that Plaintiff failed to state a securities claim against Trump. (SPA7, SPA14.)

Plaintiff's allegations regarding the other Defendants are equally deficient. (SPA7, SPA14.) Although Plaintiff's Complaint is confusing, the Complaint appears to characterize the following as intentional misstatements or omissions: (1) statements by Plaintiff's "financial advisors and by the promoters of the project that he would receive the 15% interest payment for his entire investment of $1,000,855.67" (A45 at ¶ 19); (2) representations by all Defendants that Plaintiff's investment would be returned in three years from the date of the advance of funds (A47 at ¶ 27); and (3) the Memoranda that purportedly contained unidentified material omissions and misstatements (which are unidentified by Plaintiff). (A47 at ¶ 32). Here, the Complaint clearly fails to provide any details supporting Plaintiff's allegations.

Initially, the Complaint fails to identify a single misstatement or omission in the Memoranda. Additionally, Plaintiff fails to specify *each statement* alleged to have been misleading, who made the statement, when it was made, or why it was

misleading. Plaintiff does not provide any facts supporting the allegation that his unidentified "advisors" purportedly represented that he would receive a guaranteed 15% return on his investment or the return of his entire investment within three years.

In fact, Harborspire's Operating Agreement grants broad discretion to the General Manager to make payments to Class A and Class B investors based on Harborspire's cashflow and performance. (SA123-SA128.) Therefore, Dr. Kosovich expressly agreed, as a Class B investor, that those returns on his investment were <u>not</u> guaranteed at all; they were contingent upon the Project's cashflow and performance. (SA123-SA128.)

As Judge Rakoff recognized, because each of Plaintiff's allegations is inconsistent with the express terms of the Controlling Agreements, the allegations are unreasonable as a matter of law. (SPA8.) Dr. Kosovich alleges that: (a) he was not a "qualified" or "sophisticated" investor (A46, A48 at ¶¶ 22, 34); (b) the Memoranda misled him (A46 at ¶ 23); (c) the Memoranda did not qualify as an exemption to the filing requirements of Regulation D (A48 at ¶ 34); and (d) the Memoranda were unregistered offerings in violation of SEC Rules and Regulations. (A48 at ¶ 35.) These allegations, however, are nothing more than conclusory statements, and they are not only unsupported by factual allegations; they are also flatly contradicted by Plaintiff's own representations and warranties

set forth in the Controlling Agreements. Plaintiff does not set forth how or why he was an unqualified investor. Plaintiff does not explain why the Memoranda did not qualify as an exemption to the SEC filing requirements, nor does he explain how the Memoranda violated SEC rules and regulations.

Absent allegations of a misstatement or an omission with sufficient factual support to state a plausible securities claim, there is no need for this Court to even consider the remaining elements of a securities claim. Nonetheless, as explained below, Judge Rakoff properly held that Plaintiff failed to meet each required element for stating a claim.

### 2. <u>The Trial Court Properly Held That Plaintiff Failed To Allege Justifiable Reliance Because His Conduct Was Unreasonable As A Matter of Law.</u>

The trial court appropriately rejected Plaintiff's allegations concerning justifiable reliance as "unreasonable as a matter of law" because he allegedly relied upon statements that were directly contradicted by the offering materials to which he agreed. (SPA7-SPA8.) Here, Plaintiff is not entitled to rely upon representations purportedly made by unidentified Defendants, when those representations were flatly and repeatedly contradicted by statements in the Offering Binder that Plaintiff received before making his investment. *Spain v. Deutsche Bank*, 08 Civ. 10809 (LBS), 2009 WL 3073349, at *3 (S.D.N.Y. Sept. 18 2009) (granting motion to dismiss 10b-5 claim where alleged oral

misrepresentations concerning investment risk were contradicted by offering materials that plaintiff received before investing). In fact, Exhibit A to Plaintiff's own Complaint consists of documents that completely undermine his allegation of justifiable reliance. (A55.)

The trial court held that leave to amend the pleadings was inappropriate because Plaintiff's "securities fraud allegations are so substantially flawed." (SPA7.) The trial court explained as follows:

> **To begin with, plaintiff's core securities fraud claims – those alleging that defendants represented to plaintiff that his investment would be in the nature of a loan – fail for the fundamental reason that any reliance on the misstatements he alleged was unreasonable as a matter of law, given the innumerable disclaimers in the offering materials.**
>
> An absence of justifiable reliance defeats a securities fraud claim, and because this element involves inquiry into what a reasonable investor should have done, plaintiff's professed financial cluelessness is beside the point if he acted unreasonably. **It is unreasonable as a matter of law 'for a plaintiff to claim to have relied on oral misrepresentations that are contradicted in written offering materials.'**
>
> [SPA7-8 (internal citations omitted).]

Indeed, Plaintiff's failure to allege justifiable reliance is so fundamental that the trial court dismissed it with prejudice.[7] (SPA8.) On one hand, Dr. Kosovich alleged, for the first time in his brief in opposition to Defendants' motion to

[7] Dismissal with prejudice was appropriate here pursuant to *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block Bldg. 1 Housing Dev. Fund Co.*, 608 F.2d 28 (2d Cir. 1979). In *Silberblatt*, the Second Circuit noted that "a trial court does not abuse its discretion in denying leave to amend a complaint which even as amended would fail to state a cause of action." *Id.* at 42. Here, even if Plaintiff were permitted to amend his Complaint, he would still be unable to state a cause of action against Defendants due to the myriad factual deficiencies to support his claims.

dismiss, that he did not see the Memoranda until 2009, and therefore, he was unaware of the many warnings stated therein. (A250 at ¶ 10.) On the other hand, a central allegation of the Complaint was that he relied on statements contained in the Memoranda, which induced him to invest in 2005. (A44 at ¶¶ 13-14, A46 at ¶ 21, A49-A50 at ¶¶ 43-51.) Plaintiff cannot have it both ways. If Dr. Kosovich did not see the Memoranda before he made his investment in 2005, he cannot allege that the Memoranda contains misrepresentations upon which he relied. (SPA14.) However, if Dr. Kosovich reviewed the Memoranda before making his investment, he cannot allege he was unaware of the warnings contained in the Memoranda. (SPA10.)

### 3. Plaintiff Failed To Allege Scienter With Sufficient Particularity.

As the trial court properly held, Plaintiff's securities fraud claim fails to "state with sufficient particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." (SPA12 (quoting 15 U.S.C. § 78u-4(b)(2)).) Judge Rakoff recognized that the Complaint makes "only the faintest gestures toward pleading the necessary fraudulent intent, and certainly does not plead facts showing that an inference of scienter is 'cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" (SPA12 (*citing Telllabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)).)

The Complaint clearly fails to exclude a "more likely explanation[]" here: Dr. Kosovich explicitly stated that he was dissatisfied with the investment returns from his 401(k) plan and, consequently, invested in real estate instead. (A249 at ¶ 5.) Consistent with the Controlling Agreements, Plaintiff recognized and assumed the risk of investing in real estate. After his investment failed to yield the returns he expected, Plaintiff commenced this action in an effort to recoup his losses. Given the timing of Plaintiff's investment and the subsequent crash of the real estate and financial markets, and given the Complaint's scant factual support, Plaintiff's allegations are simply not plausible. Thus, Plaintiff clearly failed to allege facts sufficient to support a strong inference that Defendants' had fraudulent intent.

#### 4. The Trial Court Recognized That Plaintiff Failed To Allege That Defendants' Alleged Misrepresentations Caused Plaintiff's Losses.

The trial court also held that Plaintiff failed to allege a causal connection between Defendants' alleged misrepresentations and Plaintiff's loss. (SPA13.) To plead loss causation, a plaintiff must allege that the subject of the fraudulent statement or omission was the cause of the actual loss suffered. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005). That is, the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security. *Id*.

Here, Plaintiff's own Complaint concedes that he did not receive the returns on his investment to which he claims he is entitled because the Project itself did not generate cashflow or turn a profit. (A45-A46 at ¶¶ 18, 25.) The trial court properly recognized that Plaintiff does not allege that Defendants' misrepresentations caused Plaintiff's investments to yield inadequate returns. (SPA13.)

### 5. Count One Fails To Demonstrate A Breach Of Securities Laws.

The allegations in the Complaint also fail to allege that Harborspire's Memoranda breached relevant securities rules and regulations. (SPA14.) The Securities Act of 1933 generally requires the registration of securities with the Securities and Exchange Commission. 15 U.S.C. § 77a, *et seq*. However, there are exemptions to the registration requirement. Offers and sales of securities that satisfy 17 C.F.R. § 230.506 are exempt from the filing requirements associated with public offerings under the Securities Act.

Plaintiff makes conclusory allegations that he did not qualify as a "sophisticated investor" under the exemptions of Regulation D. (A48 at ¶ 34.) Plaintiff also characterizes the Harborspire offering as illegally registered. (A48 at ¶ 35.) As the trial court found, the Complaint is "utterly devoid of reference to facts or law that would support this conclusion." (SPA14.)

Here, Defendants were not required to register the Memoranda with the SEC because it was an exempt offering pursuant to 17 C.F.R. § 230.506. Plaintiff has not alleged a failure to satisfy this section. Further, contrary to Plaintiff's innuendo, whether Plaintiff was a "sophisticated investor" is irrelevant to whether Harborspire's Private Placement was exempt from registration requirements.

Moreover, Plaintiff's allegations are, again, inconsistent with the Controlling Agreements to which he agreed. Dr. Kosovich completed forms at the time of his investment representing that his net worth was more than the minimum threshold required by 17 C.F.R. § 230-501(a)(5). (SA300-SA328.) First, he check-marked a blank space representing that his net worth was more than one million dollars ($1,000,000) when he executed the Class A and Class B Subscriptions. (SA311, SA326.) Second, in completing his investor's questionnaire, Dr. Kosovich represented that his "approximate annual income from all sources" is "10M+," which presumably meant $10 million, and his approximate total assets were "25M+," which presumably meant $25 million. (SA305.) Plaintiff cannot plausibly recant those material representations now that it is convenient for him to assert that he is not a "sophisticated investor."

Without question, Plaintiff's loosely assembled collection of conclusory allegations fail to state a claim for a breach of securities law. Accordingly, Count One of the Complaint "stops short of the line between possibility and plausibility

of entitlement to relief." *See Iqbal*, 129 S.Ct. at 1949. Therefore, the trial court's decision to dismiss Count One of the Complaint with prejudice must be affirmed.

## III. THE TRIAL COURT FOUND THAT PLAINTIFF'S STATE LAW CLAIMS ARE ALSO FATALLY DEFICIENT.

### A. The Trial Court Properly Dismissed Plaintiff's Fraud Claim For The Same Deficiencies That Undermined His Securities Fraud Claim.

The trial court's reasoning related to securities fraud applied to common law fraud with regard to (a) misrepresentations or omissions, (b) reasonable reliance, (c) scienter, and (d) loss causation. (SPA15 (*citing May Dep't Stores Co. v. Int'l Leasing Corp*., 1 F.3d 138, 141 (2d Cir. 1993); *Fezzani v. Bear, Stearns & Co*., 592 F. Supp.2d 410, 423 (S.D.N.Y. 2008) ("Courts in the Second Circuit have found that the 'elements of common law fraud are essentially the same as those which must be pleaded to establish a claim under § 10(b) and Rule 10b-5.'")).)

To set forth a valid claim for a fraud, a plaintiff must allege as to each defendant: (a) that defendant made a misrepresentation; (b) as to a material fact; (c) which was false; (d) and known to be false by defendant; (e) that was made for the purpose of inducing plaintiff to rely on it; (f) that plaintiff did so rely; (g) in ignorance of its falsity; (h) to his detriment. *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994). Moreover, a complaint alleging fraud must satisfy Rule 9(b)'s specificity requirement. *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp.2d

549, 556 (S.D.N.Y. 2004). To satisfy Rule 9(b), a complaint must: (a) specify the statements that plaintiff contends were fraudulent; (b) identify the speaker; (c) state where and when the statements were made; and (d) explain why the statements were fraudulent. *Id.* Essentially, the complaint must "do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so." *In re Omnicom Group, Inc. Sec. Litig.*, 2005 WL 735937, at *4 (S.D.N.Y. Mar. 28, 2005) (*citing Rombach v. Chang*, 255 F.3d 164, 174 (2d Cir. 2004)). Additionally, in the instance where there is more than one defendant who is charged with fraud, the plaintiff must "particularize and prove *each* defendant's participation in the fraud . . . ." *USA Certified Merchs. LLC v. Koebel*, 262 F.Supp.2d 319, 332 (S.D.N.Y.) (*citing DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (emphasis added).

Here, Plaintiff failed to set forth a valid claim for fraud.

**1. <u>Plaintiff Fails To Plead The Elements Of Fraud.</u>**

Plaintiff alleges Defendants made the following representations to him regarding his investment: (1) "[P]laintiff would be paid interest on the monies advanced by him, to be paid annually;" and (2) "[Plaintiff] would be repaid his invested funds 3 years from the dated [sic] that the monies were paid to the defendants." (A49 at ¶¶ 41-42.) Specifically, with respect to Trump, Plaintiff alleges "Trump and Trump Development contracted with Metro to lend the Trump

name and reputation to the development to be erected as Trump Plaza." (A50 at ¶ 47.) "Trump permitted the promiscuous and indiscriminate use of his name and reputation to create the impression by the general public that Trump was intimately connected and involved with the Project as a principal." (A50 at ¶ 48.) Finally, Plaintiff alleges that he "was greatly impressed by the presence of Trump in the Project and was influenced thereby to make his investment of one million dollars plus." (A50 at ¶ 49.) Plaintiff further alleges these statements were made to induce him into investing in the Project, and they did, allegedly, induce him to invest. (A51 at ¶ 57.) Plaintiff concludes that he was damaged by his alleged reliance on these representations and, therefore, seeks relief in the amount of his investment plus interest at the alleged promised rate. As explained in Section III. A. 2 *infra*, these bare-bones allegations are implausible and insufficient to sustain a fraud claim.

### 2. Plaintiff Fails To Plead His Fraud Claim With Specificity.

Plaintiff fails to satisfy the Rule 9 pleading requirement for fraud. First, Plaintiff fails to identify a specific misrepresentation made by any Defendant. Accepting Plaintiff's allegations as true, Plaintiff fails to identify *how* the purported "misrepresentations" were calculated to induce Plaintiff to rely on them. Furthermore, Plaintiff does not identify a single speaker who made a purported misrepresentation. He is required to "particularize and prove *each* defendant's

participation in the fraud." *In re Omnicom Group*, 2005 WL 735937, at *4. Instead, Plaintiff generally alleged "the defendants, and each of them" made representations to him. (A49 at ¶ 41.) The Complaint's attempt to cover each Defendant with broad allegations fails to state a claim. Plaintiff also fails to state where and when the allegedly fraudulent statements were made, which also contravenes Rule 9(b). *See In re Bristol –Myers Squibb Sec. Litig.*, 312 F.Supp.2d at 556.

The Complaint is also deficient because Plaintiff's fraud claim specifically references the use of Trump's name, but Plaintiff fails to identify a single statement or representation made by Trump, false or otherwise, that he relied on to his detriment. The sum and substance of Plaintiff's fraud claim against Trump is that the use of the name Trump itself amounts to fraud. Such a claim is irrational, implausible, and not supported by law.

## IV. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

Plaintiff has not alleged a plausible claim for breach of contract by Defendants,[8] and therefore, Count Two of the Complaint must be dismissed with prejudice as to Defendants. To establish a claim for breach of contract, a plaintiff

[8] As with Plaintiff's other counts (save count three), there are no specific allegations against Trump. Trump was not a party to any alleged agreement between Plaintiff and any Defendants. (A48-A49 at ¶ 36.) To the extent that Count Two or any other count of the Complaint can be construed to allege a cause of action against Trump, the arguments raised by the other Defendants apply to Trump with equal force.

must show an agreement, a breach of the agreement, and damages. *Auerbach v. Klein*, 859 N.Y.S.2d at 901, 2008 WL 680730, at *12 (N.Y. Sup. Ct. Feb. 15, 2008).[9] To withstand a motion to dismiss, a breach of contract claim must allege, in non-conclusory language, the essential terms of the parties' contract including the specific provisions of the contract upon which liability is predicated. *Caniglia v. Chicago Tribune – New York News Syndicate, Inc.*, 612 N.Y.S.2d 146 (1st Dept. 1994) (affirming dismissal of breach of contract claim without leave to replead). A contract-based claim that fails to adequately identify the contract at issue (1) fails to give fair notice of the claims and the grounds upon which they rest; and (2) does not raise a right above the speculative level. *Twombly*, 550 U.S. at 555.

**1. Plaintiff's Breach Of Contract Claim Is Based Upon The Same Basic Allegations And Seeks The Same Relief As His Fraud Claim.**

Initially, Plaintiff's contract claim must be dismissed because it is based upon the same allegations that form Plaintiff's fraud claim. When a breach of contract claim and a fraud claim are alleged, the plaintiff "must distinguish the two claims by (1) demonstrating a legal duty separate from the duty to perform under the contract; (2) establishing a fraudulent misrepresentation collateral or extraneous to the contract; or (3) seeking special damages caused by the

[9] The Controlling Agreements are governed by New Jersey law, and New Jersey follows the same standard for breach of contract. *Grow Co., Inc. v. Chokshi*, 2006 WL 3783519, at *2 (N.J. App. Div. Dec. 22, 2006) (*citing Coyle v. Englander's*, 199 N.J. Super. 212 (App. Div. 1985)).

misrepresentation and unrecoverable as contract damages." *Sultan v. Read*, 2005 WL 486732, at *3 (S.D.N.Y. Mar. 1, 2005). Here, Plaintiff does not distinguish his fraud claim from his claim for breach of contract.

Plaintiff's breach of contract claim is purportedly based upon the Controlling Agreements that he executed when he became a Class A and Class B investor in the Project, which are also central to Plaintiff's fraud claims. Plaintiff does not set forth any legal duty separate and apart from the duties contained within the Controlling Agreements. "Notably, an allegation that defendant made an intentionally false statement concerning its intent to fulfill its obligations under the contract does not represent a misrepresentation collateral or extraneous to the contract." *Sultan v. Read*, 2005 WL 486732, at *3 (*citing Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)). Plaintiff merely alleges Defendants failed to repay the principal of his equity investment plus interest. Finally, Plaintiff is not seeking any special damages under his contract claim that are unrecoverable in his fraud claim. Under these facts, Plaintiff's contract claim merely restates Plaintiff's fraud claim, further justifying dismissal.

### 2. <u>Plaintiff Fails To Allege The Elements Of A Breach Of Contract.</u>

As the trial court properly held, Plaintiff failed to allege the elements of a breach of contract claim. (SPA15.) Plaintiff alleges he entered into an

unidentified contract, by way of UBS Financial, with Metro Homes on or about June 30, 2005. (A48-A49 at ¶ 36.) Plaintiff argues this contract provided for two things: (1) Plaintiff agreed to *advance* the sum of $1,000,868 to Metro Homes, Geibel, and Fried for a term of three years; and (2) Metro Homes, Geibel, and Fried, in turn, agreed to pay Plaintiff interest at the annual rate of fifteen percent (15%). (A48-A49 at ¶ 36.)

The trial court recognized that Plaintiff's claim is flawed due to its "failure to identify with any specificity the terms of the contract that was allegedly breached." (SPA15.) For this reason alone, the Complaint fails to set forth fair notice of Plaintiff's alleged contract claim and the grounds upon which it rests. Further, Kosovich's bare conclusory allegations that Defendants failed to repay him, causing him to suffer damages do not support a cause of action for breach of contract under New Jersey law or New York law. *Marino v. Vunk*, 835 N.Y.S.2d 47, 39 A.D.3d 339 (1st Dep't 2007) (dismissing breach of contract claim where plaintiff submitted no documentation and failed to allege the precise terms entitling plaintiff to relief); *see also Khrakovskiy v. Denise*, 2009 WL 3380326, at * 10 (D.N.J. Oct. 19, 2009) (finding a lack of competent evidence regarding the damages element of a breach of contract claim where the there was no evidence of damages presented "beyond the bald conclusory statements" contained in a certification.). The *Marino* court concluded that "[v]ague and conclusory

allegations are insufficient to sustain a breach of contract cause of action. *Id.* (*citing Gordon v. DeLaurentiis Corp.*, 529 N.Y.S.2d 777, 141 A.D.2d 435, 436 (1988)). Accordingly, Count Two should be dismissed.

## V. PLAINTIFF FAILS TO STATE A CLAIM FOR "MONIES LOANED" OR "MONIES HAD AND RECEIVED AND UNJUST ENRICHMENT."

The trial court properly held that Plaintiff's remaining claims for "monies loaned" (Count Four) and "monies had and received and unjust enrichment" (Count Five) similarly fail. (SPA16.) Where, as here, express contracts govern the subject matter of the dispute, New York law precludes an equitable, quasi-contract claim such as unjust enrichment. *In re First Cent. Fin. Corp.*, 377 F.3d 209, 214 n.4 (2d Cir. 2004) ("[w]here a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists."); *Gidatex S.r.L. v. Campaniello Imports, Ltd.*, 49 F. Supp. 2d 298, 301 n.4 (S.D.N.Y. 1999) ("The quasi-contractual remedy of unjust enrichment is only available when no express contractual obligation exists."). The existence of the Controlling Agreements, therefore, mandates that Plaintiff's unjust enrichment claim be dismissed.

Plaintiff *invested* $1,000,855.67 with Harborspire—it was not a loan. Plaintiff's investment was advanced to Harborspire along with the fully executed Controlling Agreements that define the rights and obligations of Dr. Kosovich as a Class A and Class B investor in Harborspire. Count Four, therefore, is governed

by contracts, and he is not entitled to relief under quasi-contractual theories. Similarly, Defendants were not unjustly enriched at Plaintiff's expense. Count Five of Plaintiff's Complaint, for "monies had and received and unjust enrichment," alleges that Defendants have been unjustly enriched at his expense in the amount of $1,000,800. (A52 at ¶¶ 65-67.)

Moreover, as a matter of law, Plaintiff cannot pursue damages under an unjust enrichment theory when the damages sought are duplicative of the damages sought under a contract. *See Granite Partners, L.P. v. Bear Stearns & Co.*, 17 F.Supp.2d 275, 312 (S.D.N.Y. 1998); *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 767 F. Supp. 1269, 1284 (S.D.N.Y. 1991) ("bargained-for-benefits cannot be deemed to unjustly enrich a contracting party"). Plaintiff's claim of unjust enrichment seeks the same $1,000,800 plus interest that Plaintiff seeks under Count Two of the Complaint, which is specifically for breach of contract. Because the damages sought by Kosovich's unjust enrichment claims are duplicative of the damages sought by Kosovich's contract claims, Count Five of the Complaint should be dismissed.

## CONCLUSION

The trial court properly held that Plaintiff's claims against Defendants Metro Homes, Metro GM, Vector, Geibel, Fried, Trump, and Trump Organization are <u>not</u> sustainable as a matter of law. Contrary to the Complaint, the rights and

obligations of Dr. Kosovich are clearly set forth in a series of contracts that govern his investment in Harborspire. The Complaint fails to allege facts sufficient to satisfy any of the claims contained in the Complaint.

Accordingly, this Court should affirm the District Court's dismissal of each count of Plaintiff's Complaint, with prejudice, as to Defendants Metro Homes, Harborspire, Metro GM, Vector, Geibel, Fried, Trump, and Trump Organization.

DATED: September 15, 2010

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Attorneys for Defendants Metro Homes, LLC; Dean S. Geibel; Paul E. Fried; Metro Harborspire, LLC; Metro Harborspire GM, LLC; and Vector Urban Renewal Associates GM, LLC

By: *s/Leo V. Leyva*
Leo V. Leyva
Kevin R.J. Schroth
900 Third Avenue
New York, New York 10022
(212) 752-8000
(646) 521-2027 Facsimile
lleyva@coleschotz.com
kschroth@coleschotz.com

LITE DEPALMA GREENBERG, LLC
Attorneys for Defendants Donald J. Trump and the Trump Organization, Inc.

By: *s/Mayra V. Tarantino*

Mayra V. Tarantino
Two Gateway Center, 12th Floor
Newark, NJ 07102
(973) 623-3000
(973) 623-0858 Facsimile
mtarantino@litedepalma.com

## CERTIFICATE OF COMPLIANCE

**Federal Rules of Appellate Procedure Form 6–Certificate of Compliance With Rule 32(a)**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because his brief contains 9,652 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii),

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Attorneys for Defendants Metro Homes, LLC; Dean S. Geibel; Paul E. Fried; Metro Harborspire, LLC; Metro Harborspire GM, LLC; and Vector Urban Renewal Associates GM, LLC

By: *s/Leo V. Leyva*
Leo V. Leyva
Kevin R.J. Schroth
900 Third Avenue
New York, New York 10022
(212) 752-8000
(646) 521-2027 Facsimile
lleyva@coleschotz.com
kschroth@coleschotz.com

LITE DEPALMA GREENBERG, LLC
Attorneys for Defendants Donald J. Trump and the Trump Organization, Inc.

By: *s/Mayra V. Tarantino*

Mayra V. Tarantino
Two Gateway Center, 12th Floor
Newark, NJ 07102
(973) 623-3000
(973) 623-0858 Facsimile
mtarantino@litedepalma.com